# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL W. STOVALL, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 04-319 (RMC) |
| ANN M. VENEMAN, Secretary, ) Department of Agriculture, *et al.*, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Michael W. Stovall, an African-American farmer residing in Alabama, sues the Farm Service Agency ("FSA"), an agency within the U.S. Department of Agriculture ("USDA"), and four individual FSA employees[1] for race discrimination. The Defendants have filed a motion to dismiss, which Mr. Stovall opposes. The Court finds that his claims under the Equal Credit Opportunity Act are time-barred, his constitutional claims are precluded by the doctrine of sovereign immunity, and his contract claim must be presented to the Court of Federal Claims.

## BACKGROUND

In 1993, the FSA supervisor in Lawrence County, Alabama, denied Michael Stovall, a lifelong farmer, an application for a farm ownership loan.[2] Later, in 1994, Mr. Stovall received

---

[1] Plaintiff brings suit against Richard Knouff, Kendall Faust, Carolyn Cooksie, and Clarence J. "Sam" Snyder III. The First Amended Complaint misidentifies three defendants as Richard "Knoff" (rather than Knouff), as "Kenneth" Foust (rather than Kendall), and as Sam Snyder (rather than Clarence).

[2] The facts are taken from the Amended Complaint and Plaintiff's Response and Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

an application and submitted a request for a $200,000 farm ownership loan and a $60,000 farm operating loan.[3] These loan applications were denied.[4] After Mr. Stovall appealed these denials, the Lawrence County FSA supervisor approved his operating loan in November 1994.[5]

After failing in subsequent attempts to secure additional loans, Mr. Stovall filed a complaint with the USDA Office of Civil Rights ("OCR") in January 1996, charging FSA with race discrimination. OCR ruled in Mr. Stovall's favor, finding that FSA discriminated on the basis of race when it denied or delayed his farm ownership loan in 1994 and his farm operating loan in 1995.

Mr. Stovall and OCR settled his administrative complaint in January 1998 and memorialized that settlement in a "Resolution Agreement." Under the terms of the agreement, Mr. Stovall waived any rights against USDA and USDA employees arising from his administrative complaint and received $145,000 in compensatory damages, discharge of his debt to FSA, reasonable attorney's fees and costs, priority consideration on future applications, and other relief.

In March 1998, Mr. Stovall again applied for a farm ownership loan and a farm operating loan. This time he was assisted by two individuals in the FSA national office, Defendants

---

[3] Under the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq.*, FSA is authorized to make loans to farmers who cannot obtain credit from commercial institutions. "Farm ownership" loans assist farmers in buying or improving farm property, 7 C.F.R. § 1943.2, and "operating" loans provide credit and management assistance to help farmers run their farms, 7 C.F.R. § 1941.2. Until 1999, decisions to approve or deny applications for benefits were made by a combination of farmers elected to local committees and USDA staff. During that period, African-American farmers "complained that county officials [] exercised their power in a racially discriminatory manner, resulting in delayed processing or denial of applications for credit and benefits by African-American farmers not experienced by white farmers who are similarly situated." *Pigford v. Glickman*, 206 F.3d 1212, 1214 (D.C. Cir. 2000).

[4] Mr. Stovall asserts that these loan applications were denied at least three times.

[5] Mr. Stovall contends that "[d]espite the approval, [he] did not receive the loan proceeds until March 1995." Amend. Compl. ¶ 12.

Carolyn Cooksie and Clarence Snyder. Dissatisfied with FSA's responsiveness, Mr. Stovall filed two additional discrimination complaints. In response to these complaints, OCR sent Mr. Snyder to Alabama to help ensure that Mr. Stovall's applications were properly processed. These applications were approved in March 1998 and the funds were disbursed in November 1998. Mr. Stovall then purchased farm land from FSA inventory.

A year later, in April 1999, Mr. Stovall sought additional FSA funding to build two chicken houses. After consulting with Ms. Cooksie, FSA approved an additional $35,000 in loans in December 1999. However, after a meeting involving the building contractor and Defendant Richard Knouff of the local FSA office, it became apparent that construction of the two chicken houses would require more funds. Mr. Stovall asked Mr. Knouff if FSA would provide the necessary funds but was informed that he did not qualify for additional loans. Mr. Snyder helped Mr. Stovall to develop a Farm and Home Plan to assess the commercial viability of the chicken houses. According to Mr. Stovall, the Farm and Home Plan did not demonstrate adequate cash flow and Mr. Knouff again notified Mr. Stovall in October 2001 that FSA could not consider additional loans or loan restructuring.

Mr. Stovall initiated this lawsuit in January 2004 against USDA, FSA, and the named FSA employees in their individual capacities. In his Amended Complaint, Mr. Stovall asserts claims under the Equal Credit Opportunity Act, the United States Constitution, the Alabama Constitution, and for breach of contract. In his opposition to the Defendants' motion to dismiss, Mr. Stovall dropped certain claims and "now only seek[s] recovery for violations of his rights under the Equal Protection and Due Process clauses of the Fifth Amendment, violations of the Equal Credit and Opportunity Act ("ECOA"), Alabama constitutional tort and breach of contract." Pltf.'s Opp. ¶ 1.

**LEGAL STANDARDS**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (a cause is presumed to lie outside the court's limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction). Pursuant to Federal Rule of Civil Procedure 12(b)(1), a federal court must dismiss if it lacks subject-matter jurisdiction to hear and decide the dispute. FED. R. CIV. P. 12(b)(1). To avoid dismissal, subject-matter jurisdiction must have existed on the date that the lawsuit was filed. *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 392 n.12 (3d Cir.1991). The plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002). Nevertheless, the complaint must be construed liberally and a plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

The court also must dismiss a complaint if the plaintiff has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) demands that a court assess the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Dismissal is only appropriate if it appears beyond doubt that no set of facts proffered in support of plaintiff's claim would entitle him to relief. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003); *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir.1987).

**ANALYSIS**

Mr. Stovall alleges that Defendants Cooksie, Snyder, Faust, and Knouff "collectively and intentionally orchestrated this ploy" -- a Farm and Home Plan that showed no cash flow for Mr.

Stovall -- "to ensure that [he] could not farm and would effectively be out of business." Pltf.'s Opp. ¶ 16. He asserts that racial animus contributed to the delay in receiving his loans, which resulted in lower crop yields. *See id.* ¶ 17 ("The loans received were too little and too late, all because Plaintiff is black.").

### *A.    Equal Credit Opportunity Act Claims*

The Equal Credit Opportunity Act ("ECOA") makes it "unlawful for a creditor to discriminate against any applicant with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a). Because FSA extends credit, the ECOA applies to its activities. *See Mays v. Buckeye Rural Elec. Coop., Inc.*, 277 F.3d 873, 876 (6th Cir. 2002) (an entity that permits delay of payment or to purchase property and defer payment is a "creditor" within the meaning of the ECOA); *Lewis v. Glickman*, 104 F. Supp. 2d 1311, 1319 (D. Kan. 2000) (FSA is a creditor within the meaning of the ECOA). The ECOA creates a private right of action against creditors, including the United States, who violate its anti-discrimination provisions. *Miller v. Am. Express Co.*, 688 F.2d 1235, 1237 (9th Cir. 1982) (ECOA creates a private right of action for declaratory and equitable relief and for actual and punitive damages); *see Moore v. Dep't of Agric.*, 55 F.3d 991, 994 (5th Cir. 1995) (reading the ECOA to include a broad waiver of governmental immunity). Creditors who discriminate are "liable to the aggrieved applicant for any actual damages," 15 U.S.C. § 1691e(a), and for appropriate equitable and declaratory relief, 15 U.S.C. § 1691e(c).

The statute of limitations for bringing a discrimination claim under the ECOA is two years from the date of the alleged violation. 15 U.S.C. § 1691e(f); *Mays*, 277 F.3d at 879-80; *Pigford*, 206 F.3d at 1214. Mr. Stovall's complaint is based upon events that occurred between 1999

and 2001.[6] Mr. Stovall filed his initial complaint in January 2004. Having failed to file suit within two years of the alleged discrimination, his claims under the ECOA are time-barred and must be dismissed.

Mr. Stovall argues that "Congress passed legislation in 1999 that had the effect of waiving the ECOA's two-year statute of limitations . . . , extend[ing it] to fourteen years . . . ." Pltf.'s Opp. ¶ 20. Mr. Stovall misconceives the effect of this legislation. Congress retroactively extended the limitations period for certain claims under the ECOA. *See Mients v. United States*, 50 Fed. Cl. 665, 669-70 (2001) (examining the extension of the limitations period under ECOA). It extended the jurisdiction of the district courts to adjudicate an otherwise-untimely complaint if the complaint was filed by October 21, 2000 and was based upon "a nonemployment related complaint that was filed with the Department of Agriculture before July 1, 1997 and alleges discrimination at any time during the period beginning on January 1, 1981 and ending December 31, 1996." The Act of Oct. 21, 1998, Pub. L. No. 105-277, § 101(a), 112 Stat. 2681-30 (codified as a note to 7 U.S.C. § 2279 (2000)).

Mr. Stovall filed his initial complaint in January 2004 -- more than three years too late. Even if he had timely filed, Congress did not extend the limitations period for the type of claims alleged in Mr. Stovall's complaint. The legislation allowed civil suits by those who had filed administrative complaints concerning discrimination that occurred between January 1, 1981 and December 31, 1996. Mr. Stovall's ECOA claims are based mainly upon events that occurred

---

[6] The last event that may be relevant to the statute of limitations calculation is October 2001. *See* Amend. Compl. ¶ 24 ("In October 2001, Defendant [Mr. Knouff] sent [Mr. Stovall] a notice stating that the FSA could not consider additional loans or restructuring because of the nonfeasability of Plaintiff's revised Farm and Home Plan and because he had reached the maximum limits of loan feasibility.").

between 1999 and 2001 and are not eligible. Those claims that are arguably eligible -- stemming from events that occurred between 1993 and 1996 -- were resolved when he signed the Resolution Agreement in 1998 and he is foreclosed from initiating a new lawsuit now.

### B.     Constitutional Claims

Mr. Stovall raises additional constitutional claims, alleging that his rights under the Due Process and Equal Protection clauses of the United States Constitution and his "right to equality" under the Alabama Constitution have been violated.[7] Constitutional claims for money damages against federal agencies are claims against the United States. *Clark v. Library of Cong.*, 750 F.2d 89, 103-104 (D.C. Cir. 1984); *Kline v. Republic of El Salvador*, 603 F. Supp. 1313, 1316 (D.D.C. 1984). And, the United States can be sued only to the extent that it consents to suit. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (internal quotation marks and brackets omitted).

The D.C. Circuit has "recognized the well-established rule that sovereign immunity bars suits for money damages against officials in their official capacity, absent a specific waiver by the government." *Ward v. Kennard*, 133 F. Supp. 2d 54, 59 (D.D.C. 2000) (citing *Clark*, 750 F.2d at 103). The United States has not waived its sovereign immunity for constitutional torts. *See Kline*, 603 F. Supp. at 1317 ("the Federal Tort Claims Act does not waive sovereign immunity with respect

---

[7] Mr. Stovall initially brought this cause of action under the Fourteenth Amendment. *See* Compl. ¶ 30. The Fourteenth Amendment does not apply to the federal government. However, the Due Process Clause of the Fifth Amendment applies to the federal government and the Supreme Court has interpreted that clause to include a guarantee of equal protection. *Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954). The Court analyzes the claim under the Fifth Amendment.

to constitutional torts"); *Birnbaum v. United States*, 588 F.2d 319, 327-28 (2d Cir. 1978) (same). Accordingly, the constitutional claims – whether arising under the U.S. Constitution or the Constitution of the State of Alabama – must be dismissed.[8]

### C.     Breach of the 1998 Resolution Agreement

The Amended Complaint makes it clear that Mr. Stovall is also advancing a claim for breach of the 1998 Resolution Agreement.  Compl. ¶¶ 43, 44.  This Court does not have jurisdiction over this claim because Mr. Stovall is seeking damages in excess of $10,000.[9]

The Tucker Act, 28 U.S.C. § 1346(a)(2), waives the sovereign immunity of the United States for contract claims, *United States v. Mitchell,* 463 U.S. 206, 215 (1983), and provides that the district courts share original jurisdiction with the Court of Federal Claims over any

> civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction over any civil action or claim against the United States founded upon any express or implied contract with the United States not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1), [41 U.S.C. §§ 607(g)(1), 609(a)(1)], of the Contract Disputes Act of 1978.

28 U.S.C. § 1346(a)(2).  A plain reading of this provision indicates that district courts do not have jurisdiction over contractual claims exceeding $10,000.  Rather, such claims must be brought in the Court of Federal Claims.  *Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003) (under the "(Big)

---

[8] *Accord McMillian v. Monroe County*, 520 U.S. 781, 788 (1997) (discussing Alabama sovereign immunity provision and immunity of state officials from suit).

[9] The initial complaint sought $20 million in damages.  Compl. at 16.  The Amended Complaint states that Mr. Stovall "has suffered almost incalculable pecuniary and non-pecuniary damages."  Am. Compl. ¶ 27.

Tucker Act," claims in excess of the $10,000 jurisdictional ceiling are within the exclusive jurisdiction of the Court of Claims).

A claim for breach of the 1998 Resolution Agreement must be brought in the Court of Federal Claims because, "under the Tucker Act . . .[,] a settlement agreement is considered a contract," *Shaffer v. Veneman*, 325 F.3d 370, 372 (D.C. Cir. 2003), and "jurisdiction to decide whether the Department breached the settlement agreement lies exclusively in the Court of Federal Claims." *Brown v. United States*, 389 F.3d 1296, 1297 (D.C. Cir. 2004).  Mr. Stovall nevertheless asks the Court to "assert ancillary jurisdiction" over his breach-of-contract claims because it would be in the interest of judicial efficiency.  Pltf.'s Opp. ¶ 23.  Because his other claims are not justiciable, the breach-of-contract claim is not "ancillary" to any claim remaining before this Court and must be transferred.  *Kokkonen*, 511 U.S. at 380 (ancillary jurisdiction is only appropriate for matters that are incidental to other claims properly before the court).

## CONCLUSION

The complaint allegations arising under the ECOA and the United States and Alabama Constitutions will be **DISMISSED**.  The complaint allegations relating to the alleged breach of contract will be **TRANSFERRED** to the United States Court of Federal Claims.  A separate order accompanies this memorandum opinion.


DATE:   January 24, 2005.                    /s/
                                             ROSEMARY M. COLLYER
                                             United States District Judge